JUAN ANTONIO ROMÁN MAYOL, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE RELACIONES DE FAMILIA, SAN JUAN, HON. LUIS A. JUAN, JUEZ, demandado.

Número: O-73-128     Resuelto: 13 de noviembre de 1973

*César R. Vázquez Díaz* y *Luis R. Montañez Avilés,* abogados del peticionario.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Al reconocer el carácter personalísimo e individual de la pensión de retiro percibida con posterioridad al divorcio,

que la excluye del caudal de la sociedad de gananciales sujeto a liquidación, este Tribunal se expresó así:

"Queda incólume en el caso de autos el derecho a alimentos de la interventora provisto por el Art. 109 del Código Civil, 31 L.P.R.A. sec. 385.([13]) En la determinación de este derecho, claro está, se puede tomar en consideración el monto de la pensión del recurrente.

([13]) El Art. 109 del Código Civil provee:
'Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia de la cuarta parte de los ingresos, rentas o sueldos percibidos.' " *Maldonado* v. *Tribunal Superior*, 100 D.P.R. 370, 378, (1972).

Queda por resolver si ese derecho a alimentos de la esposa divorciada puede hacerse efectivo contra la pensión por incapacidad de un ex-empleado federal. El recurrente, un anterior empleado federal así pensionado, invoca el carácter exento de su pensión basándose en la Sec. 8346 del Título 5 del Código Anotado de los Estados Unidos (5 U.S.C.A. sec. 8346) que transcrita literalmente dice:

"(a) Los dineros mencionados en este subcapítulo no pueden ser cedidos, ni en ley ni en equidad, ni estarán sujetos a ejecución, imposición, embargo, retención u otro proceso legal (or other legal process)."

El derecho a alimentos de la mujer divorciada está regulado por el Art. 109 del Código Civil (31 L.P.R.A. sec. 385). *Cf. Suria* v. *Fernández Negrón*, 101 D.P.R. 316 (1973). La deuda alimenticia se funda en el derecho a la vida. Recae como deber moral de asistencia sobre todos los miembros de la sociedad, y como obligación jurídica en el marco más restringido de la familia. Puig Brutau, *Fundamentos de Derecho Civil*, ed. 1970, Tomo IV 2°, pág. 334. Con base en el derecho a la vida la considera Tedeschi; y Sánchez Román coincide estimando la prestación alimenticia como fundamento esencial de la existencia pues sólo preservando ésta podrá el hombre

cumplir su destino ético. Castán Tobeñas, *Derecho Civil Español*, ed. 1966, Tomo 5, Vol. II, págs. 254–5. Condensa esta realidad reconocida en la legislación universal, el enciclopedista Arrazola citado en Manresa, *Comentarios al Código Civil Español*, ed. 1956, Tomo I, págs. 782–3 cuando dice:

" 'El ser humano, que viene a la vida con el destino que le señale su propia naturaleza, tiene un derecho a la existencia y al desarrollo de la misma según sus facultades; es decir, tiene un derecho absoluto a su conservación. En la organización actual de la familia y de la sociedad se halla impuesta, primero a los parientes y después al Estado, la obligación de proveer a dicha necesidad; y cada uno en su caso está en el deber de procurar al que por sí no podría cumplir dicho fin, los medios necesarios para su conservación y desarrollo: deber altamente social, que no depende de la voluntad del que le tiene, sino que se impone a todos como una de las condiciones necesarias de la vida progresiva de la humanidad.' "

Obligación de tan alto relieve no puede estar comprendida por implicación en la frase "otro proceso legal" de 5 U.S.C.A. sec. 8346 citada. Esta exención se refiere a obligaciones corrientes originadas en la contratación privada que pueden dar lugar a embargo, ejecución, o secuestro. La obligación alimenticia no se asemeja a ninguna de éstas; su alto fin social y humanitario y su calidad moral no permiten equipararla a una deuda de colmado, de mecánico o mueblería. Una ley de exención que sirva de escudo al incumplimiento de la obligación alimenticia sería contraria a la moral y al orden público, pues el Estado tiene tanto interés en el bienestar del jubilado como en la preservación de la vida de sus dependientes o alimentistas.

Este es el criterio casi unánime de las cortes norte-americanas que en algunos casos han tratado la exención como una mera conveniencia administrativa en el pago de pensiones, que libera la oficina de pagaduría de una contabilidad extensa

y aparte de cuanto embargo, retención o ejecución afecte la pensión. ([1])

Las cláusulas genéricas de una ley deben limitarse en su aplicación para producir una interpretación sensata que excluya la injusticia, la opresión o el absurdo. *Church of the Holy Trinity* v. *United States*, 143 U.S. 457; 36 L.Ed. 226. Debe evitarse una interpretación que ocasione grandes inconveniencias o inequidad, prefiriéndose otra que sea más razonable y justa. *Bloomer* v. *McQuewan*, 14 How. 539; 14 L.Ed. 532; *Knowlton* v. *Moore*, 178 U.S. 41; 44 L.Ed. 969. Esta norma de interpretación, fundada en la política pública, es la aplicable no solo a la exención concedida a pensiones de empleados federales, sino también a las de veteranos, cuyo texto es más extremoso. (38 U.S.C.A. sec. 3101). Siguiendo esa línea se ha resuelto que una ley no debe interpretarse arbitrariamente sino en forma que propicie el sentido y significado razonable deducible de su contenido; que el vocablo "alimentos" comprende el sostenimiento o ayuda que un marido separado o divorciado deberá proveer a su anterior o actual cónyuge, que por su propia naturaleza no está incluido en la cláusula de exensión del estatuto dirigida a liberar la pensión que es el medio de vida del pensionado y su familia de reclamaciones de terceras personas. *Fischer* v. *Fischer*, 13 N.J. 162; 98 A.2d 568 (1953); *Gerold* v. *Gerold*, Or. 488 P.2d 294 (1971).

Vemos la pensión de retiro, no como una donación, sino como una retribución final y bien ganada por el empleado público que honrando una vocación de servicio, que en muchas ocasiones conlleva sacrificio y renuncia de bienes materiales, dedica los años fructíferos de su vida al bien común. Tiene el propósito de proveer un ingreso mínimo de subsistencia al

---

([1]) La exención nunca se concibió como una ayuda a esposos evasores de su responsabilidad y sí tuvo el propósito de relevar a las autoridades federales, administradoras del fondo, de la molestia de embargos de pensiones en su poder. *Commonwealth* v. *Berfield*, Pa., 51 A.2d 523 (1947).

jubilado. De ahí que al afectar una pensión de retiro al pago de pensión alimenticia deberá tomarse en cuenta el estado económico general del obligado. Esa es la connotación de la frase "podrá asignarle alimentos discrecionales" del citado Art. 109 del Código Civil. Habrá ocasiones extremas en que el modesto pago de retiro o incapacidad mermado por las fuerzas económicas inflacionarias o por erogaciones indispensables e imprevistas anulen la capacidad del obligado para desprenderse de parte de su pensión, requiriendo el caso una exoneración. *Cf. Molinari* v. *López Acosta*, 20 D.P.R. 510 (1914); *Puigdollers* v. *Monroig*, 14 D.P.R. 782 (1908); *Quiñones* v. *Corte*, 54 D.P.R. 189 (1939). La sana discreción del juez habrá de dirigirlo hacia la más justa y equitativa decisión.

El recurrente no ha elevado la transcripción de la evidencia oral ni por ningún otro medio ha puesto a este Tribunal en condiciones de intervenir con la discreción del juez sentenciador que fijó la pensión alimenticia en $100.00 mensuales.

*Se anulará el auto expedido y se devolverá el caso al tribunal de instancia para la continuación de procedimientos consistentes con esta opinión.*