Luis Miró Cruz, recurrente y recurrido, *v.* Administrador de los Sistemas de Retiro de los Empleados del Gobierno y de la Judicatura, recurrido y peticionario.

*Número:* O-82-48    *Resuelto:* 5 de mayo de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados del peticionario; *Hiram A. Meléndez Rivera,* abogado del recurrido.

## SENTENCIA

En 1970 un empleado de la Autoridad Metropolitana de Autobuses sufrió un accidente laboral que informó al Fondo del Seguro del Estado y entre tratamiento y evaluaciones y apelaciones sobre el grado de incapacidad, el proceso administrativo tomó nueve años, hasta que finalmente la Comisión Industrial le reconoció una incapacidad total permanente por resolución de 19 de enero de 1979. El empleado, que no había descontinuado su trabajo, una vez obtenida la declaración de incapacidad por la Comisión, solicitó retiro por razón de incapacidad ocupacional que le fue aceptado por el Sistema de Retiro y se computó su pensión tomando como base el 50% del sueldo que devengaba para el momento en que ocurre la inhabilidad, resultando en $200 mensuales. Recurrió el pensionado al Tribunal Superior que modificó la decisión del Administrador del Sistema de Retiro y ordenó que se calculara la pensión a base del sueldo que percibía "en el momento en que advino totalmente incapacitado". Recurrió en *certiorari* ante nos el Administrador y oído el empleado recurrido a través de su escrito de oposición, resolvemos a tenor de la Regla 50 del Reglamento.

La Ley de Retiro del Personal del Gobierno en 3 L.P.R.A. sec. 769 ordena:

*Anualidad por incapacidad ocupacional*

Todo participante que como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que: (a) de uno o más médicos, según se dispone en la sec. 771 de este título, se recibiere prueba adecuada en cuanto a la incapacidad mental o física del participante; (b)

el participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad, y (c) la incapacidad fuere indemnizable de acuerdo con las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, Capítulo 1 del Título 11.

El importe de la anualidad será igual al cincuenta (50) por ciento del tipo de retribución que se hubiere percibido en la fecha en que ocurriere la mencionada inhabilidad.

La anotación de L.P.R.A. llama la atención a que la Ley Núm. 73 de 19 de junio de 1954 enmendó el segundo párrafo sustituyendo la frase "en la *fecha de declararse* la mencionada inhabilidad", por "en la *fecha en que ocurriere* la mencionada inhabilidad". La enmienda tiene un efecto benéfico dual: favorece al empleado viabilizando su retiro tan pronto surge la incapacidad y por otro lado no obliga al Gobierno a mantener en nómina un empleado que por iniciativa propia ha manifestado no hallarse en aptitud para rendir la labor que le exige el servicio público. El lesionado no ha presentado prueba sobre la fecha en que efectivamente "ocurrió" su inhabilidad, suceso que inevitablemente se concretó mucho antes de los nueve años de ponderación entre el Fondo del Estado y la Comisión.

Descartada por mandato del legislador la fecha de *declaración* de incapacidad por el evento anterior de *aparición* o *surgimiento* de la inhabilidad, forzoso es retrotraer ésta a la fecha del accidente laboral, que aun cuando leve es germen y fuente única de la condición emocional que finalmente determinó la incapacidad ocupacional. No propicia los fines de la buena administración pública, permitir que un empleado consciente y sabedor de su incapacidad para realizar su labor continúe percibiendo un salario inmerecido por todo el tiempo que tome la declaración oficial de su inhabilidad, y que aún así compute al máximo las dos pensiones con que se retira del servicio público. En la estrechez de nuestros recursos, el exceso en los beneficios sociales otorgados a un trabajador sacrifica el derecho de otro en mayor necesidad.

Se expide el auto, se anula la sentencia recurrida y en su lugar se restablece la decisión administrativa del Sistema de Retiro.

Así lo pronunció y manda el Tribunal y certifica la Secretaria General. El Juez Asociado Señor Irizarry Yunqué emitió opinión disidente a la cual se une el Juez Asociado Señor Negrón García.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Opinión disidente del Juez Asociado Señor Irizarry Yunqué a la cual se une el Juez Asociado Señor Negrón García.

En este caso, dicho con todo respeto, se interpreta correctamente pero se aplica incorrectamente la disposición de la Ley de Retiro del Personal del Gobierno, 3 L.P.R.A. sec. 769, que dispone el derecho de todo participante del sistema de retiro a recibir una anualidad por incapacidad ocupacional computada a base de la retribución que se hubiere percibido en la fecha en que ocurriere la mencionada inhabilidad. [1]

¿Cuándo es que ocurre una inhabilidad que motiva el retiro de un empleado? La posición de la mayoría de este Tribunal es que "forzoso es retrotraer ésta a la fecha del

---

[1] La citada sección 769 dispone:

"Todo participante que como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que: (a) de uno o más médicos, según se dispone en la sec. 771 de este título, se recibiere prueba adecuada en cuanto a la incapacidad mental o física del participante; (b) el participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad, y (c) la incapacidad fuere indemnizable de acuerdo con las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, Capítulo 1 del Título 11.

El importe de la anualidad será igual al cincuenta (50) por ciento del tipo de retribución que se hubiere percibido en la fecha en que ocurriere la mencionada inhabilidad."

accidente laboral". El efecto de esta aplicación del mencionado estatuto es alentar al empleado que sufre un accidente que le causa alguna incapacidad, por leve que sea, a que abandone el servicio público y busque y halle, si puede, otro empleo, pues si sigue brindando sus servicios al Estado y su incapacidad aumenta hasta el punto en que se hace necesario su retiro, no importa cuánto tiempo haya trabajado ni el salario que esté devengando al momento de retirarse, su anualidad se computará retrotrayendo la incapacidad que motiva su retiro a la fecha de su accidente laboral. Ni más ni menos, así se resuelve en este caso.

Dice la petición:

El 17 de marzo de 1970 el aquí recurrido, Luis Miró Cruz, sufrió un accidente mientras se desempeñaba en su trabajo. El recurrido informó su caso al Fondo del Seguro del Estado, pero como la incapacidad resultó leve continuó trabajando. Mientras tanto, se sometió a tratamientos y evaluaciones y apeló la determinación de incapacidad. El trámite administrativo duró nueve años. Durante ese período se le asignaban y reconocían aumentos en su incapacidad parcial. Su sueldo también aumentó.

Este servidor público no tenía por qué retirarse en 1970. En aquella fecha sufrió un accidente que le ocasionó una incapacidad leve. Tenía derecho a que se evaluara y se le fijara compensación por ella por el Fondo del Seguro del Estado. Pero ello no significaba que estuviese impedido de seguir rindiendo sus servicios a nuestro país, y así lo hizo en forma eficiente durante nueve años, pues, si bien "se le asignaban y reconocían aumentos en su incapacidad parcial", recibió también aumentos de sueldo durante esos nueve años.

A mi juicio la inhabilidad que le impidió seguir trabajando y motivó su retiro en 1979 no ocurrió en 1970. Su historial lo demuestra. En 1970 ocurrió un accidente que inició la cadena de causalidad que finalmente produjo la inhabilidad para seguir trabajando en 1979. Es en esta

fecha que ocurre la inhabilidad y es la que debe tomarse para computar la anualidad a que tiene derecho.

La pensión que dispone la Ley de Retiro no es una donación. Es, como dijimos en *Román Mayol* v. *Tribunal Superior*, 101 D.P.R. 807, 811 (1973), "una retribución final y bien ganada por el empleado público que honrando una vocación de servicio, que en muchas ocasiones conlleva sacrificio y renuncia de bienes materiales, dedica los años fructíferos de su vida al bien común". La pensión es en el sistema democrático representativo, no un acto de recompensa del soberano, sino "una obligación moral del Estado". *Rivera* v. *Rodríguez*, 93 D.P.R. 21, 24 (1966). El cumplimiento de los objetivos, del propósito remedial de la Ley de Retiro, se hace viable mediante pautas interpretativas liberales y no restrictivas como la que ahora se ha aplicado a los hechos de este caso. Es principio harto conocido que "las leyes que crean el derecho a disfrutar de una pensión deben ser interpretadas liberalmente, a fin de que se cumpla el propósito del legislador; y que la fuerza y efecto de dichas leyes no deben conformarse estrictamente a los términos literales del estatuto". *Acuña* v. *Junta de Retiro*, 58 D.P.R. 94, 100 (1941), y autoridades allí citadas; *In re Castro y Torres Braschi*, 73 D.P.R. 564, 571 (1952).

Por las razones expuestas confirmaría la sentencia recurrida.