CC-1999-37                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mariana Hidalgo González, et al.<br><br>Demandantes-Recurridos<br><br>v.<br><br>Municipio de Caguas, et al.<br><br>Demandados-Peticionarios | Certiorari<br><br>2003 TSPR 36<br><br>158 DPR _____ |

Número del Caso: CC-1999-37


Fecha: 6 de marzo de 2003


Tribunal de Circuito de Apelaciones:
                         Circuito Regional VI

Juez Ponente:
                         Hon. Roberto González Rivera


Abogada de la Parte Peticionaria:
                         Lcda. Carmen D. Longoria Arzuaga


Abogados de la Parte Recurrida:
                         Lcdo. David Noriega Rodríguez
                         Lcdo. Rafael Humberto Marchand

Oficina del Procurador General:
                         Lcda. Miriam Álvarez Archilla
                         Procuradora General Auxiliar


Materia: Daños y Perjuicios




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mariana Hidalgo González, *et al*.

    Demandantes-Recurridos

          vs.                          CC-1999-37

Municipio de Caguas, et al.

    Demandados-Peticionarios



                        SENTENCIA


        San Juan, Puerto Rico, a 6 de marzo de 2003.


        En el presente recurso nos corresponde
determinar si ciertos empleados del
Municipio de Caguas tienen legitimación
activa para exigir la creación de un fondo
especial municipal al amparo de la "Ley de
Convenios para la Administración de
Facilidades Municipales". Por entender que
los empleados carecen de legitimación para
entablar la presente acción, revocamos.

                          I

        La Sra. Mariana Hidalgo González y un
grupo de otros empleados del Departamento
de Salud Municipal de Caguas (en adelante,
los empleados), presentaron, entre otras
cosas, un recurso de Mandamus ante el
Tribunal de Primera Instancia en

donde solicitaron que, al amparo de la "Ley de Convenios para Administrar Facilidades Municipales",[1] se le ordenara al Municipio de Caguas (en adelante, el Municipio) crear una cuenta especial con el dinero recaudado por el cobro de servicios médicos a pacientes solventes, que acudían al Centro de Diagnóstico y Tratamiento Municipal (en adelante, el C.D.T.).

En particular, los empleados alegaron que el Municipio cobraba a pacientes no-indigentes por los servicios ofrecidos en el CDT y que por virtud de la "Ley de Convenios para Administrar Facilidades Municipales", *supra,* estaba obligado a crear un fondo especial con ese dinero y a utilizar el importe recaudado para el mejoramiento de los sueldos de los empleados. Además, alegaron que el Departamento de Salud (en adelante, el Departamento) estaba incumpliendo con su deber ministerial, bajo la referida ley, al no asegurar que el Municipio actuara conforme a ésta.

Por su parte, tanto el Municipio como el Departamento solicitaron la desestimación de la demanda por entender que la referida ley era inaplicable a la situación de autos. Luego del examen de rigor, el Tribunal de Primera Instancia procedió a atender la controversia en los méritos <u>sin cuestionar la legitimación activa</u> que tenían los empleados para instar la presente acción.  Así, dicho foro desestimó las causas de acción contra el Municipio y el Departamento

---

[1] Ley Núm 52 de 2 de julio de 1985, 24 L.P.R.A. sec.74 (a) et.seq.

al coincidir con éstos en que la "Ley de Convenios para Administrar Facilidades Municipales" no le aplicaba al C.D.T. en cuestión por éste ser creado, administrado, financiado y operado por el Municipio exclusivamente sin ninguna injerencia del Departamento y sin que hubiera mediado convenio alguno entre el Municipio y el Departamento en torno a la operación de dicho centro.

Inconformes, los empleados acudieron al Tribunal de Circuito de Apelaciones, quien revocó la determinación del Tribunal de Primera Instancia al determinar que la mencionada ley le era de aplicación al C.D.T. en cuestión. De esta forma, ordenó la creación del referido fondo especial.

Oportunamente, el Departamento y el Municipio recurrieron ante nos señalando como error la aplicación de la "Ley de Convenios para Administrar Facilidades Municipales" a la situación de autos. Además, indicaron que los empleados carecen de legitimación activa para entablar esta reclamación debido a que no han sufrido daño alguno a causa de la actuación del Municipio o el Departamento. Esto pues, a su juicio, aunque se cree el aludido fondo, el Municipio tendría total discreción para disponer del dinero recaudado sin que se requiera que el mismo sea invertido necesariamente para el mejoramiento de los sueldos de los empleados.

Luego de expedir el auto solicitado y examinar las comparecencias de las partes, procedemos a resolver.

II

Antes de entrar a examinar los méritos del caso, es necesario que determinemos si los empleados tienen legitimación activa para incoar la presente acción. Esto pues, los tribunales existen <u>únicamente</u> para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas. <u>ELA v. Aguayo</u>, 80 D.P.R. 552, 558-559 (1958). Énfasis suplido. Por ello, tenemos el deber de examinar si los demandantes poseen legitimación activa, elemento necesario para la debida adjudicación de los méritos de una controversia. <u>Hernández Torres v. Gobernador</u> 129 D.P.R. 824, 835 (1992).

La legitimación activa es un instrumento de autolimitación judicial cuya función es asegurar al tribunal que el promovente de la acción es uno cuyo interés es de tal índole que con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. <u>Colegio de Ópticos de P.R. v. Vani Visual Center</u>, 124 D.P.R. 559, 564 (1989); <u>Hernández Agosto v. Romero Barceló</u> 112 D.P.R. 407, 413 (1982). En consideración a los principios de justiciabilidad, para que un tribunal ejerza su jurisdicción en la resolución de una controversia, la parte demandante tiene que demostrar que tiene un interés legítimo en el resultado del caso.

En ausencia de una ley que expresamente le confiera legitimación, el promovente de una reclamación, puede comparecer como parte demandante y demostrar su interés

real en la resolución de la controversia al satisfacer cada uno de los siguientes requisitos: (1) la parte que reclama debe haber sufrido un daño claro y palpable; (2) el daño debe ser real, inmediato y preciso, no abstracto o hipotético; (3) debe existir una relación causal razonable entre la acción que se ejecuta y el daño alegado; (4) y la causa de acción debe surgir al amparo de la Constitución o de alguna ley. Municipio de Ponce v. Autoridad de Carreteras y Transportación, res. el 29 de diciembre de 2000, 2000 T.S.P.R. 194; Colegio de Peritos Electricistas de Puerto Rico v. Autoridad de Energía Eléctrica, res. el 22 de febrero de 2000, 2000 T.S.P.R. 28; Hernández Torres v. Hernández Colón, 131 D.P.R. 593 (1992); Hernández Torres v. Hernández Colón, 129 D.P.R. 824 (1992).

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

III

Cuando se cuestiona la legitimación de una parte debemos asumir que las alegaciones del demandante son ciertas y evaluar su causa de acción de la manera más favorable para el demandante. Colegio de Peritos Electricistas de P.R. v. Autoridad de Energía Eléctrica, supra; Colegio de Ópticos de P.R. v. Vani Visual Center, supra, 567. Sin embargo, incluso a la luz de este parámetro, entendemos que los empleados no cumplen con los requisitos necesarios para tener legitimación activa y en consecuencia poder entablar esta causa de acción. Veamos.

Los empleados reclaman el derecho a obtener mejores salarios a base del supuesto de que el Municipio cobra a los pacientes solventes por los servicios médicos ofrecidos en el C.D.T. Aducen que la propia ley que faculta al Municipio a cobrar por estos servicios le ordena crear una cuenta especial para el depósito de lo facturado a estos pacientes. Este dinero deberá ser utilizado, argumentan los empleados, en beneficio de éstos. Arguyen que debido a que el Municipio no ha creado el mencionado fondo, el dinero cobrado a estos pacientes, si alguno, no está siendo utilizado en beneficio de los empleados por lo que éstos están sufriendo un daño. Siguiendo este razonamiento, los empleados reclaman como daño el no obtener todo el dinero que debió haber sido depositado en el fondo especial que el Municipio nunca creó.

La disposición en la cual los empleados fundamentan su reclamación es la sec. 6 de la "Ley de Convenios para Administrar Facilidades Municipales", 24 L.P.R.A. sec. 74 (f). En particular, dicha sección dispone que los fondos que se recobren de pacientes no-indigentes atendidos en el C.D.T. serán distribuidos entre el Municipio y el Departamento de Salud, en proporción a la cantidad aportada por cada cual, según acordado mediante convenio entre éstos. Se establece, además, que el importe que corresponda al Municipio "será utilizado única y exclusivamente para la operación de la facilidad, incluyendo el mejoramiento de los sueldos y condiciones de trabajo de los empleados".*Id.*

De la transcrita disposición se desprende que el Municipio tiene discreción para disponer de los fondos que le correspondan entre las múltiples necesidades que la operación de un C.D.T. representa. La ley limita el uso de los fondos a dos propósitos; (1) la operación de la facilidad o (2) el mejoramiento de sueldos o condiciones de trabajo. Dicho estatuto no le impone un mandato a los municipios de asignar los fondos que recaude para mejoramiento de sueldos de los empleados. El legislador, aunque limitó los usos de los fondos recaudados a través del cobro por los servicios a los pacientes solventes con el fin de que ese dinero se reinvirtiera en el mismo C.D.T. en que se generó, le otorgó discreción a los municipios para decidir en cual de las dos (2) alternativas, dispuestas por el legislador, invierte lo obtenido. El Municipio no tiene necesariamente que invertir en ambas. Su discreción estriba en escoger en cual de las dos categorías invierte lo obtenido.

Los empleados no pueden reclamar que la actuación del Municipio, al no crear el fondo, les ha causado un daño claro, palpable, real, inmediato y preciso pues es discrecional del Municipio el destinar o no el referido fondo especial al mejoramiento de sus salarios. Así, aunque el Municipio cree el referido fondo, este hecho por sí sólo, no significaría que los empleados se beneficiarían del mismo. El legislador le otorgó discreción a los municipios para utilizar ese dinero ya sea en las operaciones del C.D.T. o en el mejoramiento de los salarios

de sus empleados. Por tanto, los empleados no pueden reclamar un daño por la actuación del Municipio al no crear el fondo ya que la creación del mismo no implicaría que éstos necesariamente verían sus salarios aumentados.

La ausencia de un daño real, inmediato y preciso en los empleados, ocasionado por la acción u omisión del Municipio o el Departamento nos indica que los empleados carecen de legitimación para entablar esta causa de acción. Debemos tener presente que la discreción del Municipio no consiste en meramente determinar a cuales empleados les mejora el sueldo sino en excluir a todos los empleados del Departamento de Salud Municipal de recibir en la distribución de esos fondos y asignar la distribución de ese dinero a la otra categoría delimitada por el legislador, entiéndase la operación de la facilidad.

De igual forma, nos parece que el remedio de Mandamus que solicitan los demandantes no va dirigido a sanar el daño que se alega, pues aún cuando se obligue al Municipio a crear el fondo especial, esto no significa que los empleados del C.D.T. serán beneficiados. Esto es así porque el Municipio tiene total discreción para utilizar los fondos en las operaciones de la facilidad como, por ejemplo, para mejorar la planta física del C.D.T. y comprar equipo y no necesariamente lo tiene que utilizar, aunque a su discreción podría, en  mejorar las condiciones de trabajo y/o los sueldos de los empleados.

En este sentido, los empleados han fallado en demostrar la existencia de un daño claro, palpable, real, inmediato y

preciso provocado por la actuación del Municipio o el Departamento. Ante la inexistencia de un daño es imposible demostrar la conexión entre el daño sufrido y la causa de acción ejercitada, requisitos indispensables para tener legitimación activa y, en consecuencia, poder comparecer como demandantes en esta causa de acción. Esto nos obliga a concluir que los empleados municipales no tienen legitimación para entablar esta causa de acción.

Como es sabido, no podemos ceder ante la tentación de obviar los principios de legitimación activa para adjudicar los méritos en un caso. Hernández Torres v. Hernández Colón 131 D.P.R. 593,598 (1992); Hernández Torres v. Gobernador 129 D.P.R. 824 (1992). En vista de ello, estamos imposibilitados de considerar el reclamo de los empleados en los méritos por lo que resolvemos que incidió el Tribunal de Circuito de Apelaciones al así hacerlo.

Por las razones esbozadas anteriormente, se revoca la determinación del Tribunal de Circuito de Apelaciones y procedemos a desestimar la presente acción.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emitió Opinión Disidente a la cual se unió el Juez Asociado señor Rebollo López. El Juez Asociado señor Rivera Pérez inhibido.


                                   Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mariana Hidalgo González, *et al.*

    Demandantes-Recurridos

        v.                              CC-1999-37

**Municipio de Caguas, Departamento
de Salud,** *et al.*

    **Demandados-Peticionarios**


**Opinión Disidente emitida por el Juez Asociado señor Corrada
del Río a la cual se une el Juez Asociado señor Rebollo López.**

**San Juan, Puerto Rico a 6 de marzo de 2003.**

**El recurso de autos nos daba la oportunidad de expresarnos, en primer lugar, sobre las facultades y deberes del Secretario de Salud conforme a la Ley Núm. 56 de 21 de junio de 1969 (en adelante Ley 56), 24 L.P.R.A. sec. 61 *et seq.*; y si el Municipio de Caguas (en adelante Municipio), posee la autoridad en ley para, mediante ordenanzas municipales, fijar las tarifas a cobrar en sus facilidades de salud. En segundo lugar, si el Municipio, conforme a la sección 6 de la Ley Núm. 52 de 2 de julio de 1985 (en adelante Ley 52), 24 L.P.R.A. sec. 74f, tiene que crear una cuenta**

especial para los fondos que recobre por los servicios prestados a pacientes solventes en un centro de salud operado por el Municipio exclusivamente con fondos municipales. No obstante, la mayoría de este Tribunal, lacónicamente resuelve que los empleados demandantes, aquí recurridos, carecen de legitimación activa para incoar la presente acción, y en consecuencia, desestima la demanda. Veamos en detalle.

## I

El caso de autos gira en torno a un Centro de Diagnóstico y Tratamiento (en adelante CDT) construido en 1982 por el Municipio en terrenos de su propiedad. Desde sus inicios, el CDT opera únicamente bajo la administración del Municipio, el cual aporta los recursos necesarios para su funcionamiento y es patrono de todos los empleados que allí trabajan.[2]

Mediante ordenanzas municipales, la Asamblea Municipal de Caguas fijó los costos razonables a cobrar por los servicios de asistencia médico-hospitalaria brindados en el CDT. *Véase*, Mun. Caguas, P.R., Ordenanza Municipal Núm. 7 (4 de agosto de 1982); Mun. Caguas, P.R., Ordenanza Municipal Núm. 30 (22 de junio de 1987); Mun. Caguas, P.R., Ordenanza

---

[2] Los recurridos, Mariana Hidalgo y otros, empleados del Municipio en el CDT, exponen ante este Tribunal que, el Departamento de Salud aportó $8,630,000.00 durante el período de 1984 al 1994 para sufragar los gastos de operación del CDT, mediante convenios suscritos entre el Municipio y el Departamento de Salud. No obstante, estas alegaciones no han de ser consideradas por este Tribunal, ya que dicha prueba no estuvo ante la consideración del Tribunal de Primera Instancia y es inconsistente con los hechos estipulados por las partes. *Véase*, Apéndice de la Petición de *Certiorari*, pág. 208.

Municipal Núm. 4 (8 de julio de 1997). Entre otras cosas, en las ordenanzas aprobadas por la Asamblea Municipal, se establece que el CDT opera exclusivamente con fondos del Municipio, sin aportación alguna del Gobierno Estatal. En la Ordenanza Municipal Núm. 4, *supra*, la Asamblea Municipal expresa que está facultada para determinar las tarifas a cobrar en el CDT, en vista de que "[l]a Ley Número 81, del 30 de agosto de 1991, conocida como la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico faculta a la Asamblea Municipal a autorizar la imposición de contribuciones sobre la Propiedad, Tasas Especiales, Arbitrios, Tarifas, derechos o impuestos dentro de los límites jurisdiccionales del Municipio."

El 26 de marzo de 1997 varios empleados del Departamento de Salud Municipal, entre otros, personal de oficina, enfermeras, técnicos de salud, médicos, dentistas, paramédicos (en adelante recurridos), presentaron ante el Tribunal de Primera Instancia (en adelante TPI), una petición de interdicto, de *mandamus* y cobro de dinero contra el Municipio, su alcalde, el Departamento de Salud de Puerto Rico (en adelante Departamento), su Secretaria, y el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.). Adujeron, en síntesis, que el Municipio y su alcalde no cumplieron con su deber ministerial de crear un fondo especial para el control del dinero obtenido a través de la facturación de los servicios prestados en el CDT a personas no-indigentes, el cual debía usarse para la operación del CDT, incluyendo el

mejoramiento de sueldos y condiciones de trabajo de los empleados.

Respecto al Departamento y a la Secretaria, arguyeron que éstos, al no efectuar una supervisión adecuada para el establecimiento del referido fondo, faltaron a su deber ministerial como custodios de la política pública recogida por la Ley 56, *supra*, según enmendada.[3] En vista de ello, los recurridos alegaron que éstos le eran financieramente responsables por cualquier suma de la cual el Municipio no fuese responsable.

Así las cosas, el TPI señaló vista para el 30 de abril de 1997. Previo a la celebración de la vista, el Municipio y el Departamento sometieron sendas mociones de desestimación. El Municipio y su alcalde, por su parte, sostuvieron que la Ley 52, *supra*, no le aplicaba al CDT. En esencia, fundaron su contención en que, contrario a lo expuesto en dicho estatuto, el Departamento y el Municipio no administraban conjuntamente el CDT sino que éste operaba únicamente bajo la dirección del Municipio, inclusive que el Departamento no aportaba fondos de tipo alguno. El Departamento adujo, *inter alia*, que el CDT en cuestión pertenece al Municipio y que no tenía relación alguna con éste.[4] Como señalara la mayoría, ninguno de ellos cuestionó la legitimación activa de los empleados aquí recurridos para incoar el pleito.

---

[3] La Ley 52, 24 L.P.R.A. sec. 74a *et seq.*, enmendó la Ley 56, *supra*.

[4] Alegó, además, que la petición no cumplía con los requisitos para la expedición de un interdicto ni de un *mandamus*.

Llegado el día del señalamiento, "[l]as partes estipularon que nunca ha mediado un convenio entre el municipio de Caguas y el Departamentod [*sic*] de Salud para la operación del C.D.T. También estipularon que en términos de la creación de una cuenta especial para el manejo de los dineros que se recaudan en dicho centro con fines de reinvertir el dinero en la operación de las facilidades, incluyendo el mejoramiento de los sueldos y condiciones de trabajo de los empleados, no han seguido" las disposiciones de la Ley Núm. 52, Sec. 6, *supra*.[5] Tras escuchar los argumentos esgrimidos por las partes, el TPI acogió las solicitudes del Municipio y del Departamento y, por tanto, dictó sentencia desestimando la demanda el 5 de mayo de 1997. Concluyó que la Ley 52, *supra*, no aplicaba al CDT ya que el Departamento y el Municipio nunca lo administraron en conjunto.

Inconformes, el 16 de mayo de 1997, los recurridos acudieron ante el Tribunal de Circuito de Apelaciones (en adelante TCA) impugnando dicho dictamen. El TCA, mediante sentencia de 15 de abril de 1998 revocó la sentencia del TPI, declaró con lugar la demanda y le ordenó al alcalde abrir una cuenta especial para el control de los fondos, conforme a la Ley 56, *supra*. El TCA, aun cuando reconoció que el CDT era uno "*sui generis*" por éste funcionar exclusivamente con fondos municipales y no existir convenio alguno para una administración conjunta del mismo, concluyó que la Ley 56, *supra*, aplicaba al Municipio ya que dicha ley tenía como

---

[5] Apéndice de la Petición de *Certiorari*, pág. 208.

propósito integrar y armonizar los servicios de salud provistos por el Estado y los municipios a la población. Indicó que, al basarse el Municipio en la Ley 56, *supra*, para generar ingresos y descartar las otras disposiciones de la misma, no se cumplía con la política pública recogida en tal estatuto.[6] Por lo que, coligió que el Municipio "opera[ba] un sistema de salud contrario a las expectativas que dispone la Ley 56 en cuanto al cobro y distribución de los fondos."[7] Por último, dispuso que, aunque el CDT ha funcionado únicamente con fondos municipales, la Secretaria de Salud posee autoridad conforme a la Ley 56, *supra*, para instrumentar la misma e intervenir con el Municipio.

Oportunamente, el 13 de mayo de 1998, el Municipio presentó una moción de reconsideración ante el TCA arguyendo, entre otras cosas, que el TCA debió devolver el caso para la celebración de una vista ya que se extralimitó al declarar con lugar la demanda cuando sólo tenía ante su consideración una solicitud de desestimación y no se realizó una vista

---

[6] El 3 de agosto de 1982 la Asamblea Municipal de Caguas aprobó la Ordenanza Núm. 7, Serie 1982-83, autorizando a la Administración del Municipio a cobrar por los servicios de salud prestados a personas no médico-indigentes, con el fin de recobrar parte del costo de los mismos. Para ello, la Asamblea Municipal se apoyó en la Ley 56, *supra*. Posteriormente, se aprobó la Ordenanza Núm. 30, Serie 1986-87, para enmendar las tarifas de varios de los servicios prestados. No obstante, no se hizo referencia a la Ley 56, *supra*. Véase, *íd.*, págs. 108-114.

El 3 de julio de 1997 la Asamblea Municipal, basándose en la Ley 56, *supra*, y en la Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 *et seq.* (Ley de Municipios Autónomos), aprobó la Ordenanza Núm. 4, Serie 1997-98 estableciendo nuevos precios para los servicios médicos provistos en el CDT. Véase, *íd.*, págs. 115-119.

[7] Apéndice de la Petición de *Certiorari*, pág. 97.

evidenciaria en relación con la causa de acción de cobro de dinero.[8]  Los recurridos se opusieron[9] y, posteriormente, presentaron varias mociones las cuales el TCA no acogió.[10]

**El 8 de octubre de 1998 el TCA dictó resolución en reconsideración. Referente al planteamiento de devolver el**

---

[8] Adujo, además, que la Ley 56, *supra*, no le aplica porque, al aprobar la misma, el legislador no contempló situaciones como la del CDT; que la política pública establecida por dicho estatuto está desapareciendo con la reforma de salud; que no era necesario ampararse en la Ley 56, *supra*, ya que la Ley de Municipios Autónomos autoriza el cobro por los servicios municipales prestados; que cumple con la Ley 56, *supra*, porque utiliza los fondos recaudados para el funcionamiento de las facilidades.

[9] **Argumentaron, en síntesis, que el Municipio violó la ley al no establecer el fondo especial y que la Asamblea Municipal no tenía autoridad, en ley, para establecer los precios a cobrar por los servicios médicos prestados.**

[10] Los recurridos solicitaron al TCA que tomase conocimiento judicial de que el Municipio operaba sus facilidades médicas con un presupuesto combinado.  A tales efectos, anejaron copias certificadas de diversos contratos que evidenciaban la trasferencia de fondos del Departamento al Municipio y, al respecto, una certificación de la Administración de Facilidades y Servicios de Salud de que el Municipio recibió $8,630,000.00 durante el período de 1984 al 1994 para la compra de medicamentos, equipo y sufragar otros gastos de operación.

Aún cuando el TCA expresó que tales hechos eran susceptibles de conocimiento judicial, concluyó que era

**continúa...**

[9] **...continuación**

impropio acoger dicha solicitud, pues, estaría adjudicando prueba que el TPI no tuvo ante su consideración y que era contraria a la estipulada por las partes ante el TPI.

Además, los recurridos no expusieron ante el TCA ni ante este Tribunal, circunstancias suficientes en derecho por las cuales debía considerarse dicha prueba y no las estipulaciones ante el TPI.  Es obligación de las partes poner a los tribunales en posición para resolver conforme a Derecho, las cuestiones planteadas ante sí.

caso para la celebración de una vista a los fines de determinar si los recurridos tenían una causa de acción en cobro de dinero, el TCA señaló que el Municipio no podía levantar tal argumento ya que sometió el asunto "como una cuestión de derecho para que se resolviera la única controversia que presenta este caso, la aplicabilidad de la Ley 56 y sus consecuencias jurídicas."[11] Ello, máxime cuando presentó una moción de desestimación —acogida por el TPI como una moción de sentencia sumaria—, estipuló los hechos objeto de la controversia, no solicitó un plazo para contestar la demanda, comenzar un descubrimiento de prueba y solicitar la realización de una vista.

Además, el TCA indicó que las ordenanzas municipales fijando las tarifas a cobrar a las personas solventes eran válidas, pues son un ejercicio legítimo en beneficio de la salud de los ciudadanos del Municipio. Añadió, no obstante, que dichas ordenanzas implicaban un cumplimiento parcial con la Ley 56, *supra*, y que, bajo el derecho vigente, los municipios, por sí solos, no tenían el poder para establecer las tarifas y cobrarle a las personas solventes parte de los gastos por los servicios prestados. Por lo que, el TCA ordenó, entre otras cosas, que el Municipio estableciese un plan para el manejo y distribución del dinero recaudado y obtuviese la aprobación de la Secretaria para fijar las tarifas de los servicios brindados. Finalmente, modificó la sentencia para devolver el caso al TPI para la realización de una vista a los efectos de determinar: (1) la cantidad

cobrada desde la vigencia de las ordenanzas municipales; (2) la suma a consignar en el fondo especial; y (3) la aportación del Departamento conforme al plan de trabajo y presupuesto que presente el alcalde.

En vista de ello, el Municipio acudió ante nos, vía *certiorari*, imputando la comisión de los siguientes errores:

> A. Erró grave y manifiestamente el Honorable Tribunal de Circuito de Apelaciones al determinar que son de aplicación al Municipio de Caguas las disposiciones de la Ley Núm. 56 del 21 de junio de 1969, 24 L.P.R.A. sec. 61 y la Núm. 52 del 2 de julio de 1985, 24 L.P.R.A. sec. 74, so pretexto de hacer cumplir una política pública.

> B. La determinación del Tribunal de Circuito de Apelaciones menoscaba indebidamente la autonomía municipal que ampara al Municipio de Caguas conforme la Ley Núm. 81 del 30 de agosto de 1991, conocida como "Ley de Municipios Autónomos", 21 L.P.R.A. sec. 4001 et. seq.

II

De forma escueta, el Municipio arguyó que los recurridos carecen de legitimidad activa por éstos no haber sufrido daño alguno. En vista de tal señalamiento, nos corresponde determinar los méritos del mismo, toda vez que éste constituye la médula de la Sentencia de este Tribunal. Veamos.

Constituye norma reiterada que, un demandante posee legitimación activa si cumple con los siguientes requisitos: 1) que ha sufrido un daño claro y palpable; 2) que el

---

[11] Apéndice de la Petición de *Certiorari*, pág. 15.

referido daño es uno real, inmediato y preciso y no uno abstracto o hipotético; 3) que existe conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surge bajo el palio de la Constitución o de una ley. Véase, *Col. Peritos Elec. V. A.E.E.*, res el 22 de febrero de 2000, 150 D.P.R. __, 2000 TSPR 28, 2000 JTS 43; *Coss y U.P.R. v. C.E.E.*, 137 D.P.R. 877 (1995); *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Hernández Torres v. Hernádez Colón*, 131 D.P.R. 593 (1992).

Los requisitos de acción legitimada deben ser interpretados de forma flexible. Véase, *Col. Ópticos de P.R. v. Vani Visual Center*, 124 D.P.R. 559 (1989); *Pacheco Fraticeli v. Cintrón Antonsanti*, 122 D.P.R. 229 (1988); *Solís v. Municipio de Caguas*, 120 D.P.R. 53 (1987). "La doctrina de legitimación activa se interpreta amplia y liberalmente cuando la demanda es contra las agencias y los funcionarios gubernamentales." *García Oyola v. J.C.A.*, 142 D.P.R. 532, 539 (1997). Cuando la legitimación del demandante es cuestionada, "debemos asumir que las alegaciones son ciertas y evaluar su causa de acción de la manera más favorable para el demandante." *Col. Peritos Elec. V. A.E.E.*, *supra*, pág. 746; *Col. Ópticos de P.R. v. Vani Visual Center*, *supra*, pág. 567.

Los demandantes y recurridos en este pleito son empleados del Departamento de Salud de Caguas, que laboran en el CDT como oficinistas, enfermeras, técnicos de salud, médicos, dentistas y paramédicos, entre otros. En síntesis, éstos alegan que el Municipio y demás demandados no han cumplido

con las disposiciones de la Ley 56, *supra*, y la Ley 52, *supra*. En específico, los recurridos exigen que se cumplan las disposiciones referentes a la creación de un fondo especial, el cual ellos entienden que debe ser utilizado para **la operación del CDT,** incluyendo el mejoramiento de sueldos y condiciones de trabajo de los empleados.

Éstos basan sus reclamaciones a tenor de la sección 4 de la Ley 56, 24 L.P.R.A. sec. 61(c), y de la sección 6 de la Ley 52, 24 L.P.R.A. sec. 74(f). Respecto a la utilización de los fondos recaudados por las instituciones de salud, las disposiciones concernidas establecen lo siguiente:

> a) *Sección 4 de la Ley 56, 24 L.P.R.A. sec. 61(c) (1999).*
> . . . .
>
> Los fondos recaudados bajo esta sección que ingresen al Fondo de Salud serán utilizados, sujeto a las prioridades que establezca el Secretario de Salud, en el mejoramiento de los sueldos del personal y de los servicios y facilidades de salud en que se han recaudado.
> . . . .
>
> b) *Sección 6 de la Ley 52, 24 L.P.R.A. sec. 74(f).*
> Los fondos que recobre la facilidad de pacientes solventes serán distribuidos en proporción a la cantidad aportada por el municipio y el Departamento de acuerdo a las disposiciones de las secs. 74a a 74u de este título, transfiriendo al Departamento los fondos correspondientes a éste. Los fondos que correspondan al municipio serán utilizados única exclusivamente para la operación de la facilidad, <u>incluyendo</u> el mejoramiento de los sueldos y condiciones de trabajo de los empleados.
> . . . .
> **(Énfasis nuestro.)**

Entiende la mayoría de este Tribunal, que de la transcrita disposición, se desprende que el Municipio tiene <u>discreción</u> para disponer de los fondos que le correspondan entre las múltiples necesidades que la operación de un C.D.T.

representa; y que esa discreción descansa en la potestad que éste tiene de escoger en cual de las dos categorías invierte lo obtenido. O sea que, "[l]a [citada] Ley limita el uso de fondos a dos propósitos; (1) la operación de la facilidad o (2) el mejoramiento de sueldos y condiciones de trabajo." (Énfasis suplido). A la luz de dicho razonamiento, inherentemente errado, concluye que "los empleados no pueden reclamar un daño por la actuación del Municipio al no crear el fondo ya que la creación del mismo no implicaría que éstos necesariamente verían sus salarios aumentados."

El análisis que hace la mayoría sobre la citada disposición legal, soslaya los más elementales principios de hermenéutica, consagrados en los Artículos 14 y 15 del Código Civil,[12] a los efectos de que cuando "la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada...", y que "[l]as palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces." Cónsono con la técnica analítica judicial que incorpora el uso del diccionario como fuente confiable para determinar el significado de una palabra, *Castillo Camacho v. Dpto. del Trabajo y Recursos Humanos*, res. el 29 de septiembre de 2000; 152 D.P.R.\_\_\_; 2000 TSPR 142; 2000 JTS 154, el término "incluyendo", el cual tiene su raíz en el término "incluir", se define como "poner algo dentro de otra cosa o dentro de sus límites." Véase el Diccionario de la Real Academia

---

[12] 31 L.P.R.A., secs. 14 y 15, respectivamente.

Española, Vigésima Segunda Edición, 2001. Así, cuando el legislador redactó el susodicho artículo 6 de la Ley 52, *supra*, al insertar el "incluyendo", pretendió hacer énfasis en que los fondos correspondientes al municipio debían de ser destinados exclusivamente para la operación de la facilidad, y que el concepto genérico de "operación de la facilidad" <u>debía</u> comprender o abarcar, por designación específica del legislador, el mejoramiento de los sueldos y condiciones de trabajo de los empleados. El término incluyendo sugiere una interpretación copulativa, y no una interpretación disyuntiva. Por tanto, la referida ley no le da la alternativa al Municipio de elegir entre dos categorías para asignar los fondos, sino que le indica que éstos deben de asignarse al concepto amplio de "operación de las facilidades", el cual, independientemente de todo lo que pueda abarcar, tiene, por mandato legislativo expreso, que incluir el aspecto de mejoramiento de sueldos y condiciones de trabajo de los empleados.

No debe interpretarse arbitrariamente una ley, sino que la interpretación debe hacerse de forma que propicie el sentido y significado razonable deducible de su contenido. *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807 (1973). Asimismo, donde la ley no distingue o excluye, no procede distinguir.

Aplicando lo anterior, vistas las alegaciones de los demandantes-recurridos y las disposiciones bajo las cuales hacen sus reclamos, <u>éstos poseen legitimación activa para entablar este pleito</u>. Tomando las alegaciones de los

recurridos como ciertas e interpretando las mismas de la forma más favorable a éstos, en la medida en que no han sido mejorados sus sueldos, me veo obligado a concluir que los demandantes han sufrido daños reales e inmediatos. Disentimos, por ende, de la Sentencia de este Tribunal.


BALTASAR CORRADA DEL RIO
JUEZ ASOCIADO